IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| KARI SUE RICARD,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | No. C15-4046-LTS<br><br>**REPORT AND<br>RECOMMENDATION** |

Plaintiff, Kari Sue Ricard (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) and supplemental security income benefits (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Claimant contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant time period. For the reasons that follow, I recommend the Court affirm the Commissioner's decision.

## *I. BACKGROUND*

Claimant was born in 1962, and completed high school. AR 32. She has past relevant work as a bookkeeper, cafeteria attendant, and a secretary. AR 33-35. She applied for DIB on May 30, 2012, and then for SSI on August 27, 2012, alleging a disability onset date of August 18, 2007. AR 12. She alleged disability due to a brain injury suffered on August 18, 2007, and resultant depression, balance issues, emotional

problems, memory loss, loss of taste and smell, arm and leg weakness, and tiredness. AR 335-363.

The Commissioner denied claimant's application, initially and upon reconsideration. AR 109, 114-121. Claimant then requested a hearing before an Administrative Law Judge (ALJ). On November 14, 2013, an ALJ conducted a hearing at which claimant and a vocational expert testified. AR 29-55. The ALJ issued a decision denying claimant's claim on February 14, 2014. AR 9-26. The ALJ found claimant was unable to perform past relevant work. AR 21. The ALJ determined, however, that there was other work claimant could perform such as photocopy machine operator, sealing and cancelling machine operator, and solderer. AR 21-22.

Claimant then sought review of the ALJ's decision by the Appeals Council, which it denied on May 19, 2015. AR 1-5. The ALJ's decision stands as the final decision of the Commissioner. AR 1; 20 C.F.R. § 416.1481.

Claimant filed a complaint (Doc. 2) in this Court on June 8, 2015, seeking review of the Commissioner's decision. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition. The parties have briefed the issues, and the matter is now fully submitted.

## II.  *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. An individual has a disability when, due to her physical or mental impairments, she "is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual

lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see also Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the Claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. § 416.972(a)-(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a); *see also* 20 C.F.R. §§ 416.920(c), 416.921(a); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of her past relevant work. If the claimant cannot do her past relevant work, then, she is considered disabled. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite her or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. § 416.945(a)(1). The RFC is based on all relevant medical and other evidence. 20 C.F.R. § 416.945(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id*. If a claimant retains enough RFC to perform past relevant work, then the Claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 416.912(f), 416.920(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him [her] to make the adjustment to other work, but also that other work exists in significant numbers in the national

economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v). At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. 20 C.F.R. § 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability, and the claimant is not disabled. 20 C.F.R. § 416.935.

### III. THE ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.

2. The claimant has not engaged in substantial gainful activity since August 18, 2007, the alleged onset date (20 C.F.R. §§ 404.1574 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: remote history of skull fracture with subdural hematoma status post-surgical drainage, mild encephalomacia, late effects of intracranial injury (cognitive impairment) and dysthymia (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20

5

C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)).

5. The claimant has the residual functional capacity to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) in that the claimant can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday and sit (with normal breaks) for a total of about six hours in an eight-hour workday. The claimant must avoid climbing ladders, ropes or scaffolds. The claimant is limited to occasional postural maneuvers, such as stooping, kneeling, crouching and crawling. She must avoid even moderate exposure to hazards. The claimant may struggle with complex tasks, but retains the ability to complete 3-4 step tasks on a sustained basis.

6. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant was born on June 13, 1962, and was 45 years old, which is defined as a younger individual age 18-49 on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 18, 2007, through the date of this decision (20 C.F.R. §§ 404.350(a)(5), 404.1520(g) and 416.920(g)).

AR 13-23.

## IV.   *THE SUBSTANTIAL EVIDENCE STANDARD*

This court must affirm the Commissioner's decision "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe*

*v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Claimant argues the ALJ's decision is flawed for two reasons: (1) the vocational expert's testimony to the hypothetical question was flawed; and (2) the ALJ allegedly erroneously substituted her own opinion for that of treating doctors. I will address these arguments separately below.

### A. *The ALJ's Hypothetical Question to the Vocational Expert*

The ALJ asked the vocational expert to consider an individual of claimant's age, education, and work experience who could perform light work with the following limitations: could not climb ladders, ropes, or scaffolds, but occasionally perform all other postural movements; must avoid even moderate exposure to workplace hazards; could struggle with complex tasks on a sustained basis, but retained the ability to complete three to four step tasks on a sustained basis. AR 49. These limitations are virtually the same as the ALJ's RFC finding, discussed below. Claimant argues that the ALJ should

have also included recommendations psychologist John Meyers, Psy. D., made suggesting claimant needed to reduce sensitivity overload and take short naps in the early afternoon to help "charge up her body."

As discussed in detail below, Dr. Meyers' recommendations were not work-related limitations. Rather, they were suggestions to help claimant reduce frustrations with managing her condition. The ALJ considered Dr. Meyers' opinion as a whole, and included appropriate limitations in the RFC to the extent consistent with the record as a whole. Hypothetical questions need only include those impairments and limitations the record supports. *See*, *e.g.*, *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (hypothetical is sufficient if it includes the limitations that the ALJ accepted as true); *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999) (same); *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996) (same).

Therefore, the hypothetical question the ALJ posed to the vocational expert accurately reflected her work limitations. Vocational expert testimony, based on a properly phrased hypothetical question, may provide substantial evidence to support an ALJ's step five finding that a claimant can perform work existing in significant numbers in the national economy. *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005). In response to the properly supported hypothetical question the ALJ posed in this case, the vocational expert's testimony provided substantial evidence that claimant could perform other work existing in significant numbers in the national economy (AR 21-22).

### B. *The ALJ's Evaluation of the Expert Medical Opinions*

Claimant alleges the ALJ substituted her own opinion for that of claimant's treating doctor. I find the ALJ properly evaluated Dr. Meyers' opinion. AR 18. On March 18, 2009, Dr. Meyers completed a neurological assessment where he found that claimant's general attention, concentration, and working memory were average and within normal functioning limits. AR 329. Dr. Meyers further found that claimant's cognitive

9

processing speed and mental flexibility were average and within normal functioning limits. AR 329. He further found that claimant's overall verbal reasoning was low average, but also generally within normal functioning limits. AR 329. Further, he found claimant's overall verbal reasoning was within normal functioning limits, while her visual reasoning skills were mildly impaired. AR 329.

Dr. Meyers also found that claimant's ability to understand, remember, and carry out very short and simple, as well as detailed, instructions was within normal limits. AR 329. Dr. Meyers found claimant's ability to maintain attention and concentration for extended periods were normal, but her ability to perform activities within a schedule, maintain regular attendance, and sustain an ordinary routine without special supervision was mildly impaired. AR 328-330. Dr. Meyers further opined that claimant's ability to make simple, work-related decisions, interact appropriately with the general public, accept instructions, and respond appropriately to criticism from supervisors were mildly to moderately impaired. AR 330. Dr. Meyers also opined that claimant's ability to maintain socially appropriate behavior and adhere to basic standards of behavior were mildly impaired. AR 330. Finally, Dr. Meyers opined that claimant's ability to maintain her own schedule and complete a work week, without undue interruptions from psychologically based symptoms, were only mildly impaired. AR 330.

Claimant asserts that the ALJ "ignored the restrictions placed upon" claimant by Dr. Meyers. At the end of his assessment, Dr. Meyers offered several recommendations to aid claimant in reducing frustrations caused by her impairments. AR 330. For example, Dr. Meyers recommended that claimant write notes to herself and maintain a memory book for organization, develop patterns and routines, reduce sensitivity or overload, avoid crowds, and take short naps in the early afternoon. AR 330. Claimant argues that the ALJ committed a reversible error when she failed to include the doctor's recommendations in the hypothetical question she presented to the vocational expert.

Claimant mischaracterizes Dr. Meyers' behavioral recommendations. Although Dr. Meyers indicated claimant had mild to moderate limitations in various areas of cognitive functioning, he did not assess any specific, work-related restrictions. These opinions of Dr. Meyers are suggestions to claimant on how to cope; they are not work-related limitations. Opinions that a claimant would have difficulties in certain areas, without further elaboration, are of limited value due to vagueness. *See Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996). The ALJ discussed all the relevant medical evidence, including Dr. Meyers' neurological assessment, and assessed all limitations that the record supported in her RFC finding. The ALJ was not required to incorporate a psychologist's coping suggestions into her RFC finding.

While discussing the "paragraph B" criteria,[1] the ALJ discussed some of Dr. Meyers' findings regarding claimant's social functioning. AR 16, 330-331. The ALJ noted that claimant's ability to work in coordination with or in proximity to others without being too distractible was generally within normal limitations. AR 16, 330-331. The ALJ further noted Dr. Meyers' finding that claimant had only mild limitations in the ability to interact appropriately with the general public, maintain socially appropriate behavior, and adhere to basic standards of behavior. AR 16, 330-331.

The ALJ discussed other treatment records contained within the same medical record as Dr. Meyers' assessment. The ALJ noted that although claimant reported having numbness in her fingers and toes in October 2007, her neurological examinations were within normal limits. AR 18, 335-338. The ALJ further noted that during the neurological assessment in March 2009, claimant complained of various neurological

---

[1] To satisfy the paragraph B criteria, claimant must show at least two of the following: 1) marked restriction of activities of daily living; or 2) marked difficulties in maintaining social functioning; or 3) marked difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.

11

symptoms. AR 18, 324-327. The ALJ found that neurological testing showed some cognitive limitations, but overall claimant scored a full scale IQ of 91, which fell within the average range. AR 18, 325-326. Dr. Meyers also observed that claimant appeared to over-report her physical symptoms, which suggests that her symptoms were not as severe as alleged. AR 18, 327. Finally, the ALJ mentioned that Dr. Meyers' diagnostic impression was closed head injury with loss of consciousness, late effects of intracranial injury (cognitive impairment), and dysthymia. AR 18, 330. Thus, the ALJ properly considered, discussed, and assessed Dr. Meyers' neurological assessment.

Although the ALJ did not specify the weight she assigned to Dr. Meyers' opinion, it is clear that she properly considered the opinion. An ALJ's specific references in her decision to portions of the doctor's opinion were sufficient to show that she considered the opinion. *See Black v. Apfel*, 143 F.3d 383, 385-86 (8th Cir. 1998). Further, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. *Id.*

The ALJ included nonexertional limitations in her RFC assessment that were consistent with Dr. Meyers' assessment. The ALJ found that despite the mild limitations Dr. Meyers noted, claimant may struggle with complex tasks, but retained the ability to complete three to four step tasks on a sustained basis. AR 17. *See Howard v. Barnhart,* 379 F.3d 945, 947 (10th Cir. 2004) (finding that if the treating physician evidence does not conflict with the ALJ's residual functional capacity determination, then the burden to expressly discuss such evidence is minimized). Here, the ALJ's RFC finding is not inconsistent with the mild to moderate findings Dr. Meyers expressed in his assessment.

On July 30, 2012, the state agency medical consultant, Jennifer Wigton, Ph.D., reviewed the medical evidence and found that claimant had only mild limitations in activities of daily living and social functioning and moderate difficulties in maintaining concentration, persistence, and pace. AR 60. Dr. Wigton also found that claimant had moderate limitations in the ability to carry out detailed instructions and the ability to

complete a normal workday and workweek without interruptions from psychologically based symptoms. AR 64. However, Dr. Wigton generally found that claimant had no significant limitations in the remaining areas of cognitive functioning. AR 63-64. On October 19, 2012, Myrna Tashner, Ed.D, reviewed the evidence of record and agreed with Dr. Wigton's findings. AR 87, 90-91. The ALJ properly relied on this opinion. *See* 20 C.F.R.§§ 404.1527(e), 416.927(e) (ALJ may rely upon state-agency opinions as medical opinion evidence); SSR 96-6p (July 2, 1996), *Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants*, available at 1966 WL 374180, at *3 (ALJ may assign greater weight to state-agency opinions than to treating-source opinions)); *accord Smith v. Colvin*, 756 F.3d 621, 626-27 (8th Cir. 2014); *see also Jones*, 619 F.3d at 971 (requiring only that the record contain "some medical evidence" supporting the ALJ's decision").

The ALJ further noted that claimant's consultative examination showed that her memory scores ranged from 99 to 117, which were noted to be average to high average. AR 18, 295. *See Smith*, 756 F.3d at 626-27 (an ALJ may discount a treating doctor's opinion where objective testing is more reliable or is inconsistent). The consultative examiner further stated that "clearly her memory is not a problem," which contradicts claimant's alleged memory impairment. AR 296. The ALJ further noted the consultative examiner opined that claimant was able to sustain concentration and attention to complete tasks and understand, remember short and simple instructions under ordinary supervision. AR 296.

The ALJ properly determined that claimant could perform unskilled jobs, involving three to four step tasks on a sustained basis, which is consistent with the record as a whole. AR 17, 50. Dr. Meyers found that claimant's cognitive functioning was within normal limits, with only mild to moderate limitations in the ability to make simple, work-related decisions, request assistance or accept criticism from supervisors, interact with the general public, and maintain socially appropriate behavior, and manage her own

schedule, and complete a workweek without undue interruptions form psychologically based symptoms. AR 329-330.

The state agency medical experts, Dr. Wigton and Dr. Tashner, also concluded that claimant was limited to unskilled work. AR 66. Unskilled work involves dealing primarily with objects, rather than data or people, and such jobs generally provide substantial vocational opportunity for a person with solely mental impairments. SSR 85-15. The vocational expert testified that claimant could perform three unskilled jobs, including work as a photocopy machine operator, sealing and canceling machine operator, and solderer. AR 22, 50-51.

In deciding whether claimant was disabled, the ALJ considered medical opinions along with the rest of the relevant evidence in the record. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). In light of the medical evidence supporting the ALJ's determination, there is no basis for me to find that the ALJ substituted her own opinion for that of Dr. Meyers. The ALJ's hypothetical question to the vocational expert included all of the limitations supported by the record. AR 17, 49-50. Consequently, the vocational expert's response to the hypothetical inquiry constitutes substantial evidence that claimant could perform other work existing in significant numbers in the national economy. *Haggard*, 175 F.3d at 594. Despite her assertions that the ALJ committed reversible error, claimant has failed to identify any additional limitations that would preclude her from performing unskilled work. Thus, based upon the vocational expert's testimony, substantial evidence supports the ALJ's finding that claimant could perform a significant number of jobs that exist in the national economy.

In sum, the ALJ properly found that claimant's impairments did not preclude her from sustaining work activity. The ALJ properly considered the record as a whole, including Dr. Meyers' assessment, and assessed limitations that the objective evidence supported. Substantial evidence supports the ALJ's conclusions. *Wildman*, 596 F.3d

at 964; *Loving v. Dep't of Health & Human Serv., Sec'y,* 16 F.3d at 967, 969 (8th Cir. 1994).

## VI.   CONCLUSION

For the reasons set forth herein, and without minimizing the seriousness of claimant's impairments, I RESPECTFULLY RECOMMEND that the Court **affirm** the Commissioner's determination that claimant was not disabled, and that the Court enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) within fourteen (14) days of the service of a copy of this Report and Recommendation.  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* Fed. R. Civ. P. 72.  Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein.  *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 13th day of May, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa