# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| KARI SUE RICARD, <br><br> Plaintiff, <br> vs. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | No. C15-4046-LTS <br><br> **MEMORADUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I.   INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable C.J. Williams, United States Magistrate Judge. *See* Doc. No. 14. Judge Williams recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Kari Sue Ricard's applications for Social Security disability benefits (DIB) and supplemental security income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq. (Act).

Ricard has filed timely objections (Doc. No. 15) to the R&R. The Commissioner has not filed a response. The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II.   APPLICABLE STANDARDS

### A.   *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

*B.     Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of*

3

*Bessemer City*, 470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Judge Williams noted that Ricard alleged disability due to a brain injury suffered on August 18, 2007, and resultant depression, balance issues, emotional problems, memory loss, loss of taste and smell, arm and leg weakness and tiredness. Doc. No. 14 at 1-2. He then reviewed the ALJ's evaluation of the medical evidence – including the opinion of John Meyers, Psy. D. - and the hypothetical question posed to the vocational expert (VE). Judge Williams discussed Dr. Meyers' opinion as follows:

> On March 18, 2009, Dr. Meyers completed a neurological assessment where he found that claimant's general attention, concentration, and working memory were average and within normal functioning limits. AR 329. Dr. Meyers further found that claimant's cognitive processing speed and mental flexibility were average and within normal functioning limits. AR 329. He further found that claimant's overall verbal reasoning was low average, but also generally within normal functioning limits. AR 329. Further, he found claimant's overall verbal reasoning was within normal functioning limits, while her visual reasoning skills were mildly impaired. AR 329.
>
> Dr. Meyers also found that claimant's ability to understand, remember, and carry out very short and simple, as well as detailed, instructions was within normal limits. AR 329. Dr. Meyers found claimant's ability to maintain attention and concentration for extended periods were normal, but her ability to perform activities within a schedule,

4

> maintain regular attendance, and sustain an ordinary routine without special supervision was mildly impaired. AR 328-330. Dr. Meyers further opined that claimant's ability to make simple, work-related decisions, interact appropriately with the general public, accept instructions, and respond appropriately to criticism from supervisors were mildly to moderately impaired. AR 330. Dr. Meyers also opined that claimant's ability to maintain socially appropriate behavior and adhere to basic standards of behavior were mildly impaired. AR 330. Finally, Dr. Meyers opined that claimant's ability to maintain her own schedule and complete a work week, without undue interruptions from psychologically based symptoms, were only mildly impaired. AR 330.

Doc. No. 14 at 9-10. Judge Williams found that the ALJ properly evaluated Dr. Meyers' opinion. *Id.* at 12-14. He explained that "although Dr. Meyers indicated claimant had mild to moderate limitations in various areas of cognitive functioning, he did not assess any specific, work-related restrictions. These opinions of Dr. Meyers are suggestions to claimant on how to cope; they are not work-related limitations." *Id.* at 11. Judge Williams also found that although the ALJ did not specifically state the weight she afforded to Dr. Meyers' opinion, it was clear from the record that she properly considered the opinion. *Id.* at 12. Finally, Judge Williams found that the ALJ appropriately considered the record as a whole and that substantial evidence supported her decision that Ricard was not disabled. *Id.*

With regard to the hypothetical questions posed to the VE, Judge Williams found that they accurately reflected Ricard's limitations. Doc. No. 14 at 9. Judge Williams correctly noted that "[h]ypothetical questions need only include those impairments and limitations the record supports." *Id.* (citing *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2015); *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999); *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996)). Judge Williams also found that the VE's testimony provided substantial evidence that Ricard could perform other work existing in significant numbers in the national economy. *Id.*

5

## IV. DISCUSSION

### A. Ricard's Objections

Ricard objects to Judge Williams' findings (1) that the ALJ properly evaluated Dr. Meyers' opinion and (2) that the ALJ posed proper hypothetical questions to the VE. I will review these issues de novo.

### B. Evaluation of Dr. Meyers' Opinion

Ricard argues that the ALJ improperly substituted her opinion for Dr. Meyers'. Ricard argues that the ALJ's RFC and hypothetical question to the VE should have included Dr. Meyers' alleged findings that Ricard would have to (1) write notes to herself, (2) maintain a memory book for organization, (3) develop patterns and routines, (4) reduce sensitivity or overload by avoiding crowds and (5) take short naps in the early afternoon. AR 330. Ricard argues that although not explicitly stated as being such, these are all restrictions as to what she can do in a work setting.

#### 1. Consideration of Medical Opinion Evidence

The Social Security regulations state, in relevant part:

> Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight</u>. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of

> determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 416.927(c)(2) [emphasis added]. Thus, a treating physician's opinion is generally given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). But that opinion will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *Hacker*, 459 F.3d at 937.

When a treating physician's opinion is entitled to controlling weight, the ALJ must defer to the physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. § 416.927(a)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). The ALJ must "always give good reasons" for the weight given to a treating physician's evaluation. 20 C.F.R § 416.927(c)(2); *see also Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007). A treating physician's conclusion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis*, 392 F.3d at 994.

"In deciding whether a claimant is disabled, the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record." *Wagner*, 499 F.3d at 848 (quoting 20 C.F.R. § 404.1527(b)). "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Other relevant evidence includes medical

7

records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Some medical evidence 'must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a state agency medical . . . consultant." 20 C.F.R. 416.927(e)(2)(ii).

### 2. *The ALJ's reasoning*

The ALJ noted that Dr. Meyers performed neurological testing in March 2009 that "showed some cognitive limitations in the setting of significant emotional distress, but overall the claimant achieved a full scale IQ of 91, which fell in the average range." AR 18. The ALJ also noted that Ricard was seen for follow-up, and to discuss her test results, on March 18, 2009. *Id.* The ALJ explained that during this visit, Ricard reported that her tinnitus, dizziness and headaches had improved. *Id.* (referring to AR 323). The ALJ further noted that Dr. Meyers found that Ricard displayed good attention and concentration on testing and that while her verbal memory was good, her visual memory was impaired. *Id.* (referring to AR 323). After summarizing the subsequent medical evidence, the ALJ found that Ricard's condition had "significantly improved" since 2009, noting that "there is no evidence of any ongoing office visits or treatment for symptoms relating to the claimant's closed head injury." AR 19.

### 3. *Analysis*

Based on my de novo review of the record, I find the ALJ properly weighed the opinion of Dr. Meyers and did not simply substitute her own opinion. Ricard argues that

the statements in the "Behavioral Recommendations" section of Dr. Meyers' report should be treated as work-related limitations. I disagree. Dr. Meyers wrote the following introduction to his list of recommendations: "Adapting to cognitive impairments can help reduce frustrations, the following recommendations may be helpful." AR 330. Among the 13 recommendations were "When feeling anger, do some exercises," "At night, take some quiet time to 'process' the day," and "Learn relaxation skills." *Id.* It is obvious, from both Dr. Meyers' introductory statement and the contents of the list, that the recommendations are not work restrictions. Instead, to quote Dr. Meyers, they are suggestions to "help reduce frustrations" caused by Ricard's cognitive impairments. The ALJ did not err in failing to adopt Dr. Meyers' "Behavioral Recommendations" as work restrictions.

This conclusion is bolstered by the fact that Dr. Meyers' report did not indicate significant limitations. Dr. Meyers found that Ricard's cognitive processing speed and mental flexibility were average and within normal functioning limits. AR 329. He also found that Ricard's overall verbal reasoning was low average, but also generally within normal functioning limits. *Id.* Ricard's overall verbal reasoning was within normal functioning limits, while her visual reasoning skills were mildly impaired. *Id.* Dr. Meyers opined that Ricard's ability to understand, remember and carry out very short and simple, as well as detailed, instructions was within normal limits. *Id.* Her ability to maintain attention and concentration for extended periods was normal, but her ability to perform activities within a schedule, maintain regular attendance, and sustain an ordinary routine without special supervision was mildly impaired. AR 328-30.

Dr. Meyers also found that Ricard's ability to make simple work-related decisions, interact appropriately with the general public, accept instructions, and respond appropriately to criticism from supervisors was mildly to moderately impaired. AR 330. He opined that Ricard's ability to maintain socially-appropriate behavior and adhere to basic standards of behavior was mildly impaired. *Id*. Finally, Dr. Meyers opined that

9

Ricard's ability to maintain her own schedule and complete a work week without undue interruptions from psychologically based symptoms was mildly impaired. *Id.* These findings show, at most, mild to moderate impairments as to some cognitive functions. They are not consistent with Ricard's argument that Dr. Meyers' "Behavior Recommendations" were intended to serve as work restrictions.

Although the ALJ did not state the precise weight she afforded to Dr. Meyers' opinion, I agree with Judge Williams that it is clear the ALJ did, in fact, consider the opinion. *See Black v. Apfel*, 143 F.3d 383, 385-86 (8th Cir. 1998) (finding an ALJ's specific references to a treating source opinion is sufficient to show the opinion was considered). Moreover, the ALJ's RFC is consistent with Dr. Meyers' findings. The ALJ found that Ricard retained the RFC to complete simple three-to-four step tasks on a sustained basis. AR 17. This is consistent with Dr. Meyers' finding that Ricard's attention and working memory were in the high average range while her cognitive processing speed and mental flexibility were average. AR 326. I find no error in the ALJ's evaluation of Dr. Meyers' opinion.

In addition, I find that the ALJ's RFC findings are supported by substantial evidence. Twila L. Preston, Ph.D., performed a consultative psychological exam on February 11, 2008, and found that Ricard was able to (a) sustain concentration and attention to complete tasks, (b) understand and remember short and simple instructions and (c) carry out short and simple instructions under ordinary supervision. AR 296. Dr. Preston stated "clearly her memory is not a problem." *Id.* Jennifer Wigton, Ph.D., a state agency psychological consultant, reviewed the medical evidence and found that Ricard had only mild difficulties in maintaining concentration, persistence or pace. AR 60. Dr. Wigton found that Ricard was not significantly limited with regard to maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance or making simple work-related decisions. AR 64.

Based on my de novo review of the record, I agree with Judge Williams that the ALJ properly evaluated Dr. Meyers' opinion and formulated an RFC that is supported by substantial evidence. Ricard's objection to this portion of the R&R is overruled.

## C.     *The Hypothetical Questions*

### 1.     *Applicable Standards*

"A VE's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010) (citing *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005)). The hypothetical question must include "those impairments that the ALJ finds are substantially supported by the record as a whole." *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). "[A]n ALJ may omit alleged impairments from a hypothetical question posed to a vocational expert when '[t]here is no medical evidence that those conditions impose any restrictions on [the claimant's] functional capabilities.'" *Owen v. Astrue*, 551 F.3d 792, 801-02 (8th Cir. 2008) (quoting *Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994)). Thus, an ALJ's hypothetical question to the VE is proper if it includes all the limitations that are included in a proper RFC assessment. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006).

### 2.     *Analysis*

Ricard argues that the ALJ's hypothetical questions to the VE were improper because they did not include the limitations suggested by Dr. Meyer. As such, Ricard contends that the VE's testimony in response to the hypothetical questions does not constitute substantial evidence.

Here, the ALJ asked the VE about a hypothetical individual of Ricard's age, education and work experience who had limitations consistent with the ALJ's RFC findings. AR 48-50. The VE testified that the hypothetical person could perform jobs

11

such as a photocopy machine operator, sealing and canceling machine operator and production work soldering. AR 50-51. The ALJ then amended the hypothetical question to add that the person would need frequent unscheduled breaks and would miss more than two days of work per month. AR 51. The VE testified that a person with these additional limitations would not be able to work competitively. *Id.*

Ricard alleges that the hypothetical questions should have included the alleged work restrictions imposed by Dr. Meyer. As discussed above, however, Dr. Meyers' "Behavioral Recommendations" were not work restrictions. As such, the ALJ did not err in excluding the "Behavioral Recommendations" from either the RFC or the hypothetical questions to the VE. Instead, I find the hypothetical questions properly included all limitations that are substantially supported by the record as a whole. Thus, the VE's testimony in response to those questions constitutes substantial evidence supporting the ALJ's finding that Ricard was capable of performing other work. *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001). Ricard's objection to this portion of the R&R is overruled.

## V. CONCLUSION

For the reasons set forth herein:

1. Plaintiff Kari Sue Ricard's objections (Doc. No. 15) to the magistrate judge's report and recommendation are **overruled**;
2. I **accept** United States Magistrate Judge C.J. Williams' May 13, 2016, report and recommendation (Doc. No. 14) without modification. *See* 28 U.S.C. § 636(b)(1).
3. Pursuant to Judge Williams' recommendation:
    a. The Commissioner's determination that Ricard was not disabled is **affirmed**; and

b. Judgment shall enter against Ricard and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 15th day of September, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE